UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAITLYN MARTIN,

    Plaintiff,

v.

                                               Case No. 1:24-cv-931
                                               Hon. Hala Y. Jarbou

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claims for supplement security income (SSI).

Plaintiff filed an application for SSI on November 17, 2021, alleging disability beginning on April 4, 2021. PageID.30. Plaintiff identified her disabling conditions as schizophrenia spectrum and other psychotic disorders, post traumatic stress disorder, anxiety, depression, and irritable bowel syndrome (IBS). PageID.199. Prior to filing for disability, plaintiff completed three years of college and had no past relevant work. PageID.41, 200. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 19, 2023. PageID.30-42. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of November 17, 2021. PageID.32. At the second step, the ALJ found that plaintiff had severe impairments of schizoaffective disorder, depression, and anxiety. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.33.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember, and carry out simple instructions; Perform simple, routine, and repetitive tasks but not at a production rate pace such as an assembly line or work requiring hourly production quotas; can occasionally adapt to changes in routine job duties; can use judgment to make simple, work-related decisions; can interact occasionally with supervisors and coworkers and never with the public.

PageID.35. The ALJ also found that plaintiff has no past relevant work. PageID.41.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels. PageID.41-42. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as cleaner (250,000 jobs), kitchen helper (175,000 jobs), and folder (109,000 jobs). PageID.42. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from

November 17, 2021 (the date she filed the application) through September 29, 2023 (the date of the decision). *Id*.

### III.   DISCUSSION

Plaintiff set out two errors with sub-issues:

**A. The ALJ's Residual Functional Capacity (RFC) findings are contrary to law and not supported by substantial evidence.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. §416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe" (*see* 20 C.F.R. §416.945) "based on all the relevant medical and other evidence in [the claimant's] case record" (20 C.F.R. §416.920(e)).

**1. The ALJ's findings regarding the opinions of plaintiff's treating psychiatrist are not supported by substantial evidence.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Rather, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20

C.F.R. § 416.920c(c)(1)-(5). The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency". 20 C.F.R. § 416.920c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Plaintiff contends that the ALJ's findings with respect to her treating psychologist were not supported by substantial evidence. The ALJ addressed those findings as follows:

> Martha Schinagle, M.D. completed a treating source statement questionnaire on June 28, 2023 (12F). The doctor opined that the claimant had no useful ability to function in order to maintain attention for two-hour segments, maintain regular attendance and be punctual, complete a normal workday and work week without interruptions from psychologically based symptoms, and deal with normal work stress. She also stated the claimant could not meet competitive standards to remember work-like procedures, make simple work-related decisions, and perform at a consistent pace without unreasonable rest periods, and that she was seriously limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, and respond appropriately to changes in a routine work setting. Dr. Schnagle [sic] further opined that the claimant had extreme functional limitation in maintaining concentration, persistence, or pace and a marked functional limitation in adapting and managing self. She believed the claimant would be absent from work more than four days per month. Despite the doctor stating that the claimant had marked ability to adapt and manage self and a serious limitation in her ability to carry out very short and simple instructions, she stated the claimant could manage benefits to her own best interest (Id.).
>
> This opinion was not persuasive for several reasons. First, the opinion is in checklist form with no analysis or notes supporting the doctor's opinion. Second, it was inconsistent with the overall record and Dr. Schnagle's [sic] own treatment

6

notes on the claimant. For example, she stated the claimant had extreme limitation with maintaining concentration, persistence, or pace, and no useful ability to function to maintain attention for two-hour segments (12F). However, mental status exams by the doctor for attention and concentration varied as she found the claimant had mostly fair concentration (10F/10, 22, 37, 54) although she also assessed it as being poor twice (10F/73, 82). Other medical providers determined her attention and concentration were within normal limits (3F/72, 82; 6F/9; 8F/10). The claimant also reported that she spent a lot of time each day online with various phone applications such as TikTok and YouTube, she sold clothes online for which she needed to post the items online, complete the sale, package, and ship to the customer, she was able to "to live independently in her apartment," and complete "activities of daily living and most tasks independently," and she said that despite low motivation, she was able to get done what needed to get done (10F/6, 18-19, 27, 34, 43-44, 59-60, 64, 70, 80; Hearing Transcript). These activities are not consistent with the opinion that the claimant has extreme limitation maintaining concentration, persistence, or pace and no useful ability to function to maintain attention for two-hour segments or that she could not meet competitive standards to remember work-like procedures. The claimant also testified that she was present when the doctor completed the questionnaire, which further reduces its overall persuasiveness.

PageID.40.

The ALJ's evaluation of Dr. Schinagle's opinion is supported by substantial evidence. Dr. Schinagle evaluated plaintiff using a checklist form. PageID.914-916. As an initial matter, ALJs are not bound by conclusory statements of doctors, particularly where they appear in checklist or "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Commissioner of Social Security*, 647 Fed. Appx 563, 566 (6th Cir. 2016).(internal quotation marks omitted). *See Hernandez v. Commissioner of Social Security*, 644 Fed. Appx. 468, 474-475 (6th Cir. 2016) (observing that a checkbox opinion is "weak evidence at best" and "patently deficient").

7

Here, the Court notes that while Dr. Schinagle included a brief statement about plaintiff's psychiatric hospitalization, the statement contains clear errors and was based on "limited information" prior to 2018.[1] The ALJ's decision addressed plaintiff's April 2021 hospitalization which appears to have given rise to plaintiff's disability claim:

> The claimant presented to an emergency department on the alleged onset date due to inappropriate behavior, aggressiveness towards others including police, and tangential thoughts (1F/23). She was given an injection of Zyprexa and placed in restraints due to being aggressive towards staff (Id.). She had been off her medication for schizophrenia for at least eight weeks or more (1F/24, 30). The claimant was calm and able to come out of restraints several hours later, and arraignments were being made to find placement for inpatient mental health services (1F/27). She was discharged on April 21, 2021. . . At the discharge interview, the doctor stated the claimant was interactive, attentive, asked questions, and verbalized understanding (11F/109). She was given medication upon discharge as well as an appointment for her next Invega injection (11F/108).
>
> However, on April 26, 2021, the claimant was admitted to another mental health facility after returning to an emergency department with psychosis (2F). She was started on medication for schizophrenia, depression, and anxiety (2F/15). The claimant was discharged on May 4, 2021. She attended most groups and actively participated (2F/124-126). At discharge, she was calm and cooperative, she denied delusions and suicidal ideations. She was provided a two-week supply of medication, prescriptions for refills, an appointment for her next Invega injection, and outpatient treatment information (Id.).

PageID.36-37. The ALJ's decision does not reference a hospitalization occurring after the April/May 2021 incidents.

Since that incident, the record reflects that plaintiff uses the internet throughout the day. This includes selling clothes online on her phone on a daily basis. At the hearing, plaintiff explained the process of running her business which includes: selling her own clothes (or clothes which she buys on a monthly trip to Goodwill); printing out a shipping label; packaging the clothing in a "poly mailer" from the post office; dropping the package off at the post office; and

---

[1] Plaintiff was born in 1994. PageID.914. However, the doctor's note states that plaintiff "was first hospitalized in 1993 and again in 1995 for suicidality, and then again in 2018 when she started to have symptoms of psychosis." PageID.916.

8

obtaining supplies.  PageID.67-68.  As the ALJ observed, plaintiff lives independently and completes activities of daily living and most tasks independently. These activities are not consistent with the extreme limitations set forth by the doctor.   Finally, the ALJ noted that plaintiff did not always comply with her providers' treatment recommendations.  *See, e.g.*, PageID.38 ("The psychiatrist recommended that the claimant resume psychotherapy with the focus on coping skills, but there was no evidence that the claimant followed through, and she stated that she was not interested in doing therapy (10F/59, 65, 85).").  Based on this record, substantial evidence supports the ALJ's finding that Dr. Schinagle's June 28, 2023 opinion is not persuasive.   Accordingly, this claim of error should be denied.

> **2. The RFC determination failed to consider the effects of all plaintiff's well-documented impairments as required by 20 C.F.R. § 416.920a, SSR 96-8p and SSR 85-15.**
>
> **3. The ALJ did not properly consider plaintiff's subjective symptoms. (20 C.F.R. 416.929(c)).**

Plaintiff combined these issues for argument.  PageID.944-947.  Plaintiff contends that the ALJ did not properly consider all of her established impairments or her subjective symptoms.  Plaintiff relies on the narrative discussion requirements set forth in Social Security Ruling (SSR) 96-8p:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184 at *6-7.  Plaintiff also refers to 20 C.F.R. § 416.929(c) ("How we evaluate symptoms, including pain").

Here, plaintiff construes the RFC as indicating that she can maintain concentration, persistence or pace (stay on task) at least 15% of the work day, that she will have no more than 2 absences a month on an ongoing basis, and that she can interact with coworkers and supervisors up to 1/3 of the workday.  PageID.945.  The findings referenced by plaintiff are not set forth in the RFC determination.  *See* PageID.35.  As discussed, ALJ's RFC limits plaintiff: to performing simple, routine, and repetitive tasks, without a production rate pace; making simple, work-related decisions; and, interacting occasionally with supervisors and coworkers but never with the public.  *See id*.

Plaintiff also contends that the ALJ overstated her ability to perform activities of daily living.  *See* 20 C.F.R. §416.929(c)(3) (stating that "[t]he Commissioner also considers other evidence including: (i) Your daily activities[]").  The ALJ found that plaintiff, "is able to do personal care independently, but she said she does not bathe or change clothes regularly (3E/2; 10F; Hearing Transcript)."  PageID.34.  However, at the same time "she could leave the house to go to restaurants with family or friends, [and] she saw one friend regularly who helped her around her home and can go to the store when she needed things (10F/18, 33; Hearing Transcript)".  *Id*.  In addition, "[s]he can make something simple to eat, do regular household chores including laundry, she can shop for necessities by mail, computer, and in stores which she does monthly, and she can drive a car (3E/3-4; Hearing Transcript)."  *Id*.

Finally, the ALJ adopted observations made by plaintiff's mother (as set forth in a third-party function report from March 2022):

> [Plaintiff's mother] stated that she lives out of state but frequently comes to Michigan. [Plaintiff's mother] stated the claimant is able to prepare simple meals

10

for herself, doe [sic] all household chores on her own time, drive a car, go out along, and shop in stores and on the computer for necessities (4E/2-4). She said the claimant's ability to pay attention is improved as she can now sit in a chair and read a chapter in a book (4E/5). I note that [plaintiff's mother] is not a medical professional, and as a lay witness, she is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to her ability to work. The opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein. However, most of her statements supported that the claimant had no more than moderate functional limitation related to mental health, and that she was capable of doing activities of daily living, which is consistent with the overall record. Therefore, [plaintiff's mother's] statements were somewhat persuasive.

PageID.41. Based on this record, the ALJ's decision is supported by substantial evidence. Accordingly, these claims of error should be denied.

### B. Substantial evidence does not support the ALJ's conclusion that Ms. Martin was not at least disabled for a closed period.

As discussed, a claimant establishes a disability by showing that she cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905. Plaintiff contends that she had multiple hospitalizations and continued treatment beginning April 4, 2021, and states that the ALJ's conclusion that she was not disabled at any time between her alleged onset date and September 26, 2023 is not supported by substantial evidence. *Id*. That being said, plaintiff does not develop this claim, *e.g.*, she does not set forth the dates and reasons for establishing a closed period of disability.[2] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."

---

[2] The issue for the Court "is whether the plaintiff was disabled on or after her application date." *Casey*, 987 F.2d at 1233. Here, any such closed period of disability would commence after the application date of November 17, 2021.

11

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, this claim of error should be denied.

### IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  August 18, 2025                              /s/ Ray Kent
                                                                      RAY KENT
                                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).